**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER EUGENE GUILFORD,<br><br>Defendant. | Case No.: 1:24-CR-00022-JLT-SKO<br><br>**ORDER DENYING MOTION TO DISMISS (Doc. 46)** |

Mr. Guilford was indicted last year on charges that he filed a false tax return, resulting in him receiving approximately $1.2 million unlawfully from the Internal Revenue Service. (Doc. 1) He appeared initially in Nevada, where he was detained. *See* Doc. 10. He appeared in this Court in April 2024, and he has remained detained. *Id.* Since at least May 2024, Mr. Guilford was housed at the Central Valley Annex, in McFarland, California.

While housed at CVA, on several occasions, Mr. Guilford telephoned his lawyer, using the monitored phone located in the dorm rather than using an unmonitored phone in the attorney conference rooms. His recorded calls were collected by the assigned investigating agent, who listened to all of he calls, including those between Mr. Guilford and his lawyer. Without hearing the calls herself, when the assigned AUSA learned of these calls, she immediately deleted the calls, had the agent, who listened to the calls, removed from the investigation, and had a "taint

1

team" assigned to the matter. The taint team determined that the content of the calls was not disseminated beyond the originally assigned case agent. Even still, Mr. Guilford seeks to have his case dismissed based upon these facts. (Doc. 41) For the reasons set forth below, the motion is **DENIED**.[1]

## I. Background

While housed at CVA, Mr. Guilford was trained that the phones in the dorm are monitored. (Doc. 52-1) The phones have a sticker on them telling the inmates that the calls "may be monitored and recorded" (Doc. 52-2 at 1-2), and a recording when the call is placed, tells the inmate that the call is being monitored. (Doc. 52-1 at 1) CVA also has information posted in the dorm telling inmates how to arrange for an unmonitored call (Doc. 52-1). This information is also contained in the inmate handbook, which is provided to the inmates when they arrive at the facility. (Doc. 52-1 at 1-2; Doc. 52-4) Despite this, Mr. Guilford called his attorney 15 times before July 1, 2024, using the monitored dorm phone. (Doc. 49-1 at 1; Doc. 52-7 at 3-4) Of these times, at least two appear to have resulted in conversations between Mr. Guilford and his lawyer, due to their length.[2] *Id*.

When the AUSA received the recorded calls, she began listening to them. (Doc. 49-1) When she heard a call, which played the attorney's voicemail, the AUSA stopped listening to the calls. *Id.* She deleted the calls and, when she learned that the case agent had listened to the calls, she had him removed from the case. *Id*. She also had a taint team assigned, who investigated and learned that though the case agent had listened to the calls, no one else had done so, nor had anyone else learned of the content of the calls. *Id.* Also, the AUSA verified that the newly assigned case agent and his supervisor did not hear the calls or learn of the content of the calls. (Doc. 49-1; Doc. 61; Doc. 62)

## II. The motion to dismiss should be denied

---

[1] The Court conducted an in-camera review of documents submitted to the Court and to defense counsel. (Docs. 70-72) The information in these documents is concerning, but it bears on the situation only indirectly.

[2] Five appear to have not connected with the lawyer because there was time spent talking and no time billed to Mr. Guilford. *Id*. Two of the calls were longer than five minutes, but most were less than two minutes.

1        Mr. Guilford argues that the fact that the case agent heard the conversations between him

2 and his lawyer, justifies dismissal of the action. (Docs. 46, 51) He relies upon *United States v.*

3 *Danielson*, 352 F.3d 1054 (9th Cir. 2003). In *Danielson*, the Court determined that the Sixth

4 Amendment protects the integrity of the trial process by ensuring that the government takes no

5 action that unfairly impacts the trial's fairness. *Id*. at 1066. Unlike in *Danielson*, here, there is no

6 evidence that the government took any purposeful steps to gain attorney-client communications

7 or to unfairly impact the trial's fairness.

8        First, rather than the government eliciting statements from Mr. Guilford, Mr. Guilford

9 chose to use a phone to call his attorney that he knew would be recorded and could be monitored.

10 He had access to an unmonitored phone but chose not to use it. The fact that the government

11 sought to listen to the monitored calls is not analogous to the conduct in *Danielson*. This is a

12 routine investigatory tactic, that does not usually result in information communicated to an

13 attorney.

14        Second, the fact that the case agent listened to the communications between Mr. Guilford

15 and his lawyer, is insufficient to justify the relief sought. This conduct resulted in the case agent

16 being removed from the case and walled off from the agents who took over. Moreover, there is no

17 suggestion that the AUSA learned anything that was communicated between Mr. Guilford and his

18 lawyer during these calls. Thus, there is no showing of prejudice or, in fact, that there can be any

19 impacts on the fairness of the trial.

20        Third, Mr. Guilford's argument that the government's "outrageous conduct" requires

21 dismissal of the action, is misplaced. It bears repeating that Mr. Guilford chose to talk to his

22 attorney on phones that he knew were recorded and monitored. This situation is one that he

23 created, not the government. Though the former case agent should not have listened to the calls,

24 this does not require dismissal of the prosecution due to the quick action taken by the AUSA.

25        Finally, Mr. Guilford's argument that the fact that his attorney was not more quickly

26 alerted to the situation does not demonstrate prejudice to him. Indeed, Mr. Guilford has made no

27 effort to demonstrate any resulting prejudice, choosing instead to suggest that the delay equates to

28 prejudice. The Court disagrees. In short, the Court is unconcerned that the calls were recorded—

this was a consequence of Mr. Guilford's decision to use the phones that he knew would result in the calls being recorded. The Court's concern results only upon the government listening to the calls, which, as noted above, has not resulted in prejudice to Mr. Guilford. Again, there is no hint that the AUSA or those currently involved in this action have gained any information about Mr. Guilford's trial strategy or otherwise. While the entire situation is unfortunate, it does not convince the Court that dismissal of the indictment is warranted. Thus, the motion to dismiss the indictment is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 26, 2024**

UNITED STATES DISTRICT JUDGE