KIMBERLY A. SANCHEZ
Acting United States Attorney
ARELIS M. CLEMENTE
BRITTANY M. GUNTER
JOSEPH D. BARTON
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:24-CR-00022-JLT-SKO |
|---|---|
| Plaintiff, | UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE INADMISSIBLE EVIDENCE AND ARGUMENT |
| v. | |
| CHRISTOPHER EUGENE GUILFORD, | HEARING DATE: August 18, 2025 |
| Defendant. | TIME: 2:00 p.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.     GOVERNMENT'S MOTION IN LIMINE

Based in part on materials in discovery in this case, the government anticipates the defendant, Christopher Eugene Guilford, will seek to present at trial certain arguments and evidence that should be excluded on grounds of relevance, unfair prejudice and confusion, and hearsay. Therefore, the government moves *in limine* to preclude the defendant from:

(1) making arguments or offering evidence related to inapplicable law;
(2) claiming a "good faith belief" defense founded on arguments based on disagreements with the law;
(3) offering evidence about his "state of mind" without proper foundation;
(4) eliciting or offering "state of mind" evidence through third-party witnesses and hearsay statements;
(5) referencing the potential penalty or punishment during any phase of trial; and
(6) offering any evidence not provided as reciprocal discovery.[1]

---

[1] The defendant has not provided the government any reciprocal discovery following the Court's order on April 4, 2024. ECF 8. Therefore, this motion is largely anticipatory and based on the government's evidence, the defendant's filing history in this case, and arguments or evidence that tax defiers or sovereign citizen defendants

UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE
INADMISSIBLE EVIDENCE AND ARGUMENT                   1

## II. BACKGROUND

The defendant is charged by Superseding Indictment with one counts of violating Title 18 United States Code ("U.S.C.") § 287, False Claims Against the United States and nine counts of violating Title 26 U.S.C. § 7206(1). ECF 4. The charges relate to ten tax filings the defendant submitted to the Internal Revenue Service ("IRS") for tax years 2017 through 2020, including tax return estate and trust filings he submitted on behalf of the estate he created and named "Christopher Eugene Guilford Estate" ("CEGE") and the "Christopher Eugene Guilford Revocable Trust" ("CEGRT"). In each of these tax filings the defendant reported false income amounts, false withholding amounts and claimed a large refund amount. For the 2018 tax year filing the defendant submitted on or about February 1, 2019, specifically Count One in the Superseding Indictment, the defendant received a refund check in the amount of $1,172,446.26. The IRS sent the defendant notices and letters notifying him that some of his tax filings had been deemed frivolous by the IRS.

The defendant has made comments during the course of these proceedings and previously submitted documentation to the government that includes common language used in sovereign citizen movement, specifically the Moorish movement.[2]

## III. ARGUMENT

**A. The Defendant Should be Precluded from Making Arguments or Offering Evidence Related to Inapplicable Law That Would Mislead and Confuse the Jury.**

Statements and documents contained in discovery suggests that the defendant may seek to raise improper arguments and introduce evidence related to inapplicable law frequently cited by individuals involved in sovereign citizen movement and the redemption scheme.[3] During criminal trials, sovereign

---

have sought to offer in other similar cases.

[2] https://www.isdglobal.org/explainers/moorish-sovereign-citizens/

[3] The "redemption scheme" "advances the idea that a person has a split personality: a real person and a fictional person called the "strawman." "Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name . . . ." *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008); *see also United States v. Call*, No. 09-CR-00079-KJD-RJJ, 2009 WL 6047137, at *3 n.1 (D. Nev. Nov. 24, 2009).

While the "redemption scheme" has different versions and names, it has repeatedly been rejected by the courts. *See, e.g., United States v. Alexio*, 2015 WL 4069160, at *2 (D. Haw. Jul. 2, 2015) ("'[c]ourts across the

citizens often invoke, usually out of context, portions of the following legal resources: Uniform Commercial Code ("UCC") provisions, admiralty and maritime law, the Federal Rules of Civil Procedure, definitions of legal terms from Black's Law Dictionary, and other obscure treaties and other legal authorities. The presentation of such materials at trial is irrelevant and would mislead and confuse the jury. Therefore, the government respectfully requests the Court to:

(A) Prohibit the defendant from making any sovereign citizen, "strawman," and redemption theory type arguments, including allusions to the existence of secret individual accounts for U.S. citizens at the Federal Reserve Bank; and

(B) Prohibit the defendant from referencing at trial or invoking provisions of the UCC, Administrative Procedures Act or other unrelated and misleading bases of civil, administrative, regulatory and international trade law.

In *Marshall v. Florida*, 2010 WL 1248846 (S.D. Fla. Feb 1, 2010), the court discussed the redemption movement. It reads in pertinent part:

> "Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets. It is increasingly popular among prison populations. The theory advocates that an individual can 'redeem' himself through the filing of commercial documents. According to the theory, the convict has a split personality: a real person and a fictional person called a "strawman." The strawman came into being when the United States went off the gold standard in 1933 and pledged its citizens as collateral for its national debt. Proponents of the theory believe that the government only has power over the strawman and not the real person. The real person, however, can "redeem" the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power.

*Id*. (dismissing the plaintiff's complaint calling it "completely frivolous").

Consistent with the redemption "strawman" theory, sovereign citizen defendants often argue that there is a legally significant distinction when their names are written in all capital letters and when they are written in lower case letters. The defendant appears to follow these practices based on his prior filings and correspondence with the government. Sovereign citizens often inexplicably claim that when their names are written in all capital letters then that designation refers to their fictional identities

---

[United States] have uniformly rejected arguments based on [a] redemption theory or substantially similar theories' . . . describing them as 'frivolous, irrational [and] unintelligible.'") (internal citations omitted); *United States v. Levy*, 849 F. Supp. 2d 1353, 1357-58 (S.D. Fla. 2012) ("every court which has considered the 'redemption theory' has dismissed it as frivolous").

(i.e., the "strawman"). Obviously, courts uniformly reject these claims. *See United States v. Mitchell*, 405 F. Supp. 2d 602, 604 (D. Md. 2005) ("'It makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. The federal courts abandoned this level of formalism long ago.'") (quoting *United States v. Singleton*, 2004 WL 1102322 (N.D. Ill. May 7, 2004) (rejecting defendant's argument that the capitalization of his name referred to a fictional person linked to a treasury account the government allegedly set up for each citizen in the 1930s and not "a flesh and blood man")). Sovereign citizen defendants frequently claim that courts have no jurisdiction over them as human beings, but rather the courts only have jurisdiction over their fictional "strawmen" identities. In *United States v. Delatorre*, 2008 WL 312647 (N.D. Ill. Jan. 30, 2008), the court rejected this notion stating:

> Furthermore, Mr. Delatorre is an actual, bona fide Defendant in this case. This Court's jurisdiction over Mr. Delatorre remains valid whether his name is written in all capital letters or a mix of capital and lower case letters, or whether he identifies himself as: a "real flesh and blood man, in his private capacity," a "sovereign secured party creditor;" a debtor; the "authorized representative of the corporate fiction-entity/debtor identified, as Fernando Delatorre," or "third party intervener on behalf of Defendant' Debtor Fernando Delatorre." Mr. Delatorre's Uniform Commercial Code ("UCC"), copyright, and trademark filings do not change this fact. The Defendants charged in this case are not fictional creations, but individual citizens of the United States subject to its valid and enforceable laws, Mr. Delatorre is not a "sovereign" outside the jurisdiction of this Court, but an individual "natural or unnatural" - subject to the criminal laws of this country "whether he requested, obtained or exercised any privilege from the federal government."

*Id.* at *2 (citing *United States v. Sloan*, 939 F.2d 499, 500-01 (7th Cir. 1991)); *United States v. Raymond*, 228 F.3d 804, 812 (7th Cir. 2000) (rejecting argument that an individual can be a sovereign citizen of a state who is not subject to the jurisdiction of the United States); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993)).

Based upon the defendant's conduct at prior court hearings and written correspondence the government has received from him, the government anticipates the defendant will attempt to utilize a similar "strawman" defense in this case and cite to inapplicable law which would mislead and confuse the jury. For instance, at prior hearings the defendant has stated on the record that he invokes certain statutes and code sections that are inapplicable in this case. He has also cited to UCC section 1-308 in

the written correspondences sent to the government. As mentioned above, these references are tied to the sovereign citizen movement and irrelevant to this case. The admission of any evidence tied to sovereign citizen movement and irrelevant and in applicable law would only mislead and confuse the jury. Therefore, the government moves to prohibit the defendant from making such improper arguments related to inapplicable law. *See United States v. Johnson*, 610 F.3d 1138, 1140 (9th Cir. 2010) ("[Defendants] were adamant in their desire to represent themselves and assert an absurd legal theory wrapped up in Uniform Commercial Code gibberish. . . . The record clearly shows that the defendants are fools, but that is not the same as being incompetent."); *Mitchell*, 405 F. Supp. 2d at 603-04 (stating that defendants' "arguments are patently without merit. Perhaps they would even be humorous–were the stakes not so high. To begin with the U.C.C. has no bearing on criminal subject matter jurisdiction."); *Black v. Florida*, 2009 WL 1605410 (N.D. Fla. June 4, 2009).

**B. The Defendant Should be Precluded from Claiming a "Good Faith Belief" Defense Founded on Arguments Based on Disagreements with the Law.**

Defendants in tax cases may not claim a good faith belief founded on arguments based on disagreements with the law. *United States v. Cheek*, 498 U.S. 192, 201-206 (1991) ("he is no position to claim that his good-faith belief about the validity of the Internal Revenue Code negates willfulness or provides a defense to criminal prosecution under §§ 7201 and 7201."). A good faith disagreement with the law is not a defense to the charges involved in this case. Therefore, the government requests the Court preclude the defendant from claiming a good faith defense founded on arguments based on disagreement with the law.

The fact that the defendant may have believed in an alternate interpretation of the law – permitting him, in his view, to have prepared the fictitious documents – does not amount to a good faith belief in the truthfulness of his statements; it is simply evidence of his disagreement with existing laws, which is not a defense. *See, e.g., United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir. 1992) (affirming instruction to the jury that "Mere disagreement with the law, in and of itself, does not constitute good faith misunderstanding under the requirements of law. Because it is the duty of all persons to obey the law whether or not they agree with it."). Though this distinction may seem nuanced, federal courts have correctly applied the rule to exclude this type of defense the government

believes the defendant may attempt to argue in this case. As the Sixth Circuit explained in *United States v. Svoboda*, 633 F. 3d 479, 484 (6th Cir. 2011):

> even if [a good faith] defense did apply to Svoboda's crimes, Svoboda's particular type of good-faith argument is not relevant for the reasons set out in *Cheek v. United States* . . . because it is not based on a good-faith belief about what the law provides, but rather a belief that the law does not validly constrain him.

In *Cheek*, the Supreme Court held that "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper." *Cheek*, 498 U.S. at 206. The Court affirmed the district court's use of the following instruction: "An opinion that the tax laws violate a person's constitutional rights does not constitute a good-faith misunderstanding of the law." *Id*. at 204. The defendant is not permitted to blur the line between factual evidence about his state of mind and the actual law. *See* Fed. R. Evid. 103(c).

Accordingly, any disagreement that the defendant has about the state of the law is not relevant to the issues before the Court because a mere disagreement with the tax laws is no defense to the charged crime and therefore, should be excluded. *Cheek*, 498 U.S.at 202-03; *Powell*, 955 F.2d at 1212; *United States v. Barnett*, 945 F.2d 1296, 1298-1301 (5th Cir. 1991). Therefore, if the defendant seeks to present a good faith belief defense, the government requests the Court exclude any general discussions of the defendant's beliefs as to the validity of tax statutes and the law because such arguments and evidence are irrelevant and not a valid defense to the charges involved in this case.[4].

**C. The Defendant Should Be Precluded from Offering Evidence About His "State of Mind" Without Proper Foundation**.

Furthermore, for material relating to the defendant's state of mind to be admissible in a tax case, a defendant first must lay a proper foundation demonstrating that he "actually relied" upon the specific material that is being offered. *Powell*, 955 F.2d at 1214. The Court should exclude other such legal material as irrelevant and unnecessarily confusing because only the defendant's subjective beliefs

---

[4] In the event the defendant were to present at trial his disagreement with the tax laws or challenge the validity of the tax laws, it would be proper for the Court to instruct the jury along the following lines, depending on the particular issue of disagreement or challenge to the law: "A person's disagreement with the law does not constitute a good-faith misunderstanding of the law and is not a defense to the crime charged in this case." *See Cheek*, 498 U.S. at 205; *Powell*, 955 F.2d at 1212.

UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE
INADMISSIBLE EVIDENCE AND ARGUMENT                        6

are at issue. The danger is that admission of both relevant and irrelevant beliefs "could easily obfuscate the relevant issue and tempt the jury to speculate that the mere existence of documentary support for the defendant's position negates his independent knowledge that he has a legal duty." *United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991).

Once the proper foundation is established, the Court can then determine, using a Fed. R. Evid. 403 analysis, whether the material should be admitted or excluded. The Court should consider whether such materials could confuse the jury as to the law or enable the defendant to undermine the authority of the Court. The factors relevant to such a determination include: (1) the centrality of the materials sought to be introduced to a defendant's claimed misunderstanding of the tax laws; (2) the materials' length and potential to confuse the jury; (3) the degree to which such materials are merely cumulative to a defendant's testimony or to other evidence; (4) the extent to which a defendant may be attempting to use them to instruct the jury on the law or to propagate tax protestor beliefs; and (5) the potential utility of limiting instructions. *See United States v. Saldana*, 427 F.3d 298, 308 (5th Cir. 2005); *Powell*, 955 F.2d at 1214; *Barnett*, 945 F.2d at 1301 n.3; *Willie*, 941 F.2d at 1395. Under these circumstances, a court's Rule 403 balancing becomes critical to ensuring the jury does not become confused or misled by the admission of legal or pseudo-legal materials.

Consistent with the principles noted above, the Ninth Circuit has stated in dicta that a district court "ordinarily cannot exclude evidence relevant to the jury's determination of what a defendant thought the law was.". *Powell*, 955 F.2d at 1214. Thus, the Court explained, "statutes or case law upon which the defendant claims to have actually relied are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance." *Id.* Importantly, this dicta, however, does not necessarily compel the admission in evidence of copies of the legal or other materials a defendant purportedly relied upon in forming his beliefs regarding applicability of the tax laws. *E.g., United States v. Anderson*, 94 Fed. Appx. 487, 492 (9th Cir. March 23, 2004) ("neither Rule 403 nor dicta in *United States v. Powell* suggests that failing to admit the additional material offered by defendants constituted an abuse of the district court's discretion.") (unpublished). Assuming the defendant lays a proper foundation that he relied on any such materials, his theory of the defense may be presented sufficiently through his own testimony regarding his reliance on those

materials without admitting into evidence the underlying materials. *E.g., United States v. Middelton*, 246 F.3d 825, 838-39 (6th Cir. 2001) ("Where a district court believes that the probative value of proffered exhibits used to support a good-faith defense would be outweighed by possible confusion of the issues, it may properly refuse to admit such exhibits into evidence"); *Barnett*, 945 F.2d at 1301 & nn.2-4 (excluding attachments to defendant's letter where defendant was permitted to testify regarding their effect on his belief regarding applicability of the tax laws); *United States v. Stafford*, 983 F.2d 25, 27 (5th Cir. 1993) (trial court properly refused to admit copies of court cases where defendant was permitted to testify about the effect of such cases on his beliefs regarding applicability of the tax laws); *United States v. Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992) (same); *Willie*, 941 F.2d at 391-97 & n.11 (trial court properly refused to admit the U.S. Constitution, legal decisions, or other historical materials, noting "Cheek clearly did not require the admission of evidence absent compliance with procedural rules requiring an offer of proof sufficient to inform the trial judge of its purpose").

Therefore, the Court should preclude the defendant from introducing copies of materials on which he allegedly relied for his beliefs regarding applicability of the tax laws without the defendant first laying a proper foundation, and only then after a Rule 403 balancing.

**D. The Defendant Should be Precluded from Eliciting or Offering "State of Mind" Evidence Through Third-Party Witnesses and Hearsay Statements.**

The government anticipates that the defendant, through cross-examination of government witnesses, or through his own witnesses, may attempt to elicit testimony as to the witnesses' opinions regarding what the defendant purportedly believed or what others believed. Under Federal Rule of Evidence 801, statements of a defendant are not hearsay when they are offered by the United States. Fed. R. Evid. 801(d)(2)(A); *see also United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). However, a defendant may not introduce hearsay statements of the defendant or others who do not testify at trial, because the statements in such cases are not the admissions of a party opponent and are otherwise inadmissible hearsay. *United States v. Arteaga*, 117 F.3d 388, 395 (9th Cir. 1997); *see also Ortega*, 203 F.3d at 682. Allowing a defendant to introduce allegedly exculpatory hearsay statements of the defendant or others through other witnesses denies the government the right of cross-examination. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (upholding objection to

defendant's attempt to admit his own hearsay statements through another witness, because otherwise the defendant would be allowed to set forth his exculpatory statements "before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids").

Additionally, "by the nature of a tax protestor case, [the] defendant's beliefs about the propriety of his filing returns and paying taxes, which are closely related to [the] defendant's knowledge about tax laws and [the] defendant's state of mind in protesting his taxpayer status, are ordinarily not a proper subject for lay witness opinion testimony absent careful groundwork and special circumstances." *United States v. Hauert*, 40 F.3d 197, 201-202 (7th Cir. 1994); *see United States v. Kahre*, 737 F.3d 554, 577 (9th Cir. 2013) (excluding third-party witness' testimony of defendants' contemporaneous statements regarding their alleged good faith belief that certain payments were legal and non-taxable); *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) (witness testimony regarding a defendant's observations, what the defendant was told, and what the defendant said or did "will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew"). Any such proffered testimony, if admitted, would be "hearsay ... about [the] defendant['s] state of mind at the time, a subject about which [he] could be examined and cross-examined if [he] took the stand. But as a second-hand statement of memory or belief to prove the fact remembered ... it is not only hearsay, but irrelevant hearsay." *Kahre*, 737 F.3d at 577.

Therefore, the government request that the Court preclude the defendant from eliciting or offering "state of mind" evidence through third-party witnesses and hearsay statements.

E. **The Defendant Should be Precluded from Referencing the Potential Penalty or Punishment During Any Phase of Trial.**

The government requests that the defendant be precluded from eliciting testimony about or making any comment or reference, whether direct or indirect, to the potential penalties or punishment the defendant may face in this case, whether during voir dire or trial. "It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shaznnon v. United States*, 512 U.S. 573, 579 (1994) (*quotation omitted*). Presenting jurors with information about the consequences of their verdict "invites them to

ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* (citations omitted). Thus, "it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).

### F. The Defendant Should be Precluded from Offering Any Evidence Not Provided as Reciprocal Discovery.

The government requests that the defendant be precluded from offering any evidence not provided as reciprocal discovery. On April 4, 2024, the Court ordered reciprocal discovery. ECF 8. In addition, the government has previously requested reciprocal discovery from defense counsel, consistent with Federal Rules of Criminal Procedure 16(b)(1)(A). As of the date of this filing, the government has not received any reciprocal discovery from the defendant or his counsel. The government would not have had a fair opportunity to review any undisclosed evidence the defendant may seek to introduce at trial. Therefore, the Court should preclude the defendant from offering any evidence not provided as reciprocal discovery. Fed. R. Crim. P. 16(d)(2)(C).

### IV. CONCLUSION

For the above stated reasons, the Government respectfully requests the Court to preclude evidence, testimony, and argument, as outlined above, that is irrelevant, is substantially more prejudicial than probative, and invades the province of the Court to instruct on the law.

Respectfully,

Dated: August 8, 2025

KIMBERLY A. SANCHEZ
Acting United States Attorney

By: */s/ Arelis M. Clemente*
ARELIS M. CLEMENTE
BRITTANY M. GUNTER
JOSEPH D. BARTON
Assistant United States Attorneys