1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
8 **EASTERN DISTRICT OF CALIFORNIA**
9

10 UNITED STATES OF AMERICA,

11 Plaintiff,

12 v.

13 CHRISTOPHER EUGENE GUILFORD,

14 Defendant.

Case No.: 1:24-cr-00022 JLT SKO

ORDER RE MOTIONS IN LIMINE

(Docs. 119, 124, 126, 128)

15

16 Mr. Guilford is charged with one count of making false claims against the United States in

17 violation of 18 U.S.C. § 287 in relation to a tax return submitted to the Internal Revenue Service

18 for tax year 2018 and nine counts of filing a false tax return in violation of 26 U.S.C. § 7206(1)

19 (Doc. 4), though the government is not proceeding as to court 10. (Doc. 126 at 2, fn. 1.) Before

20 the Court are the motions in limine filed by the government (Docs. 119, 126, 128) and by the

21 defendant (Doc. 124).

22 **I.     Legal Standards Governing Motions in Limine**

23 "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

24 practice has developed pursuant to the district court's inherent authority to manage the course of

25 trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that

26 motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having

27 to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985,

28 1004–05 (9th Cir. 2003) (citations omitted). Courts disfavor motions in limine seeking to exclude

1

1   broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712

2   (6th Cir. 1975). Nevertheless, motions in limine are "an important tool available to the trial judge

3   to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v.*

4   *Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

5        "[A] motion in limine should not be used to resolve factual disputes or weigh evidence,"

6   *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the

7   province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The

8   Court will bar use of the evidence in question only if the moving party establishes that the

9   evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

10        Moreover, the rulings on the motions in limine do not preclude either party from arguing

11   the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a

12   change of circumstances that would make the evidence admissible. In this event, the proponent of

13   the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the

14   rulings made here are binding on all parties and not merely on the moving party.

15   **II.    Government's Motions**

16        **A.    Government's Motion Re Inadmissible Argument and Evidence (Doc. 119)**

17        The government anticipates that Mr. Guilford may seek to present at trial certain

18   arguments and evidence that the government believes should be excluded on grounds of

19   relevance, unfair prejudice and confusion, and hearsay. Therefore, the government moves in

20   limine to preclude the Defense from:

21        (1)    making arguments or offering evidence related to inapplicable law;

22        (2)    claiming a "good faith belief" defense based on arguments founded on

23             disagreements with the law;

24        (3)    offering evidence about his "state of mind" without proper foundation;

25        (4)    eliciting or offering "state of mind" evidence through third-party witnesses

26             and hearsay statements;

27        (5)    referencing the potential penalty or punishment during any phase of trial;

28             and

1    (6)    offering any evidence not provided as reciprocal discovery.

2  (Doc. 119 at 1.)

3    **1.    Relevant Facts**

4    Count 1 in this case relates to a Form 1041 Mr. Guilford submitted to the IRS for tax year

5  2018, on behalf of the estate Mr. Guilford created and named "Christopher Eugene Guilford

6  Estate." (*See generally* Doc. 4) Counts 2 through 9 claim that Mr. Guilford filed false tax

7  returns—either tax forms 1040 or 1041—for tax years 2017, 2018 and 2019 on behalf of the

8  Christopher Eugene Guilford Estate and the Christopher Eugene Guilford Revocable Trust. In

9  these tax filings, the government alleges that Mr. Guilford reported false income amounts, false

10  withholding amounts, and claimed a false refund amount. (Doc. 4.) The government asserts that

11  due to comments the defendant has made during these proceedings that he subscribes to the

12  sovereign citizen movement, specifically the Moorish movement. Doc. 119 at 2.

13    **2.    Fed. R. Evid. 401/403**

14    Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it

15  would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.

16  R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially

17  outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

18  misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

19  Fed. R. Evid. 403.

20    **3.    Arguments/Evidence Related to Inapplicable Law**

21    The government expresses concern that Mr. Guilford may seek to raise improper

22  arguments and/or introduce evidence related to inapplicable bodies of law frequently cited by

23  individuals involved in the sovereign citizen movement and the "redemption"[1] movement. (*See*

24  _____

25  [1] *Marshall v. Florida*, 2010 WL 1248846 (S.D. Fla. Feb 1, 2010), provides a succinct summary of this ideology:

26    "Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets. It is increasingly popular among prison populations. The theory advocates that an individual can 'redeem' himself

27  through the filing of commercial documents. According to the theory, the convict has a split personality: a real person and a fictional person called a "strawman." The strawman came into being when the United States went off the gold standard

28  in 1933 and pledged its citizens as collateral for its national debt. Proponents of

3

Doc. 119 at 2 & n. 3.) The government therefore seeks to: (1) preclude the Defense from making any sovereign citizen "strawman" or redemption theory type arguments, including allusions to the existence of secret individual accounts for U.S. Citizens at the Federal Reserve Bank; and (2) prohibit the Defense from referencing at trial or invoking provisions of the Uniform Commercial Code, the Administrative Procedure Act, or any other unrelated body of civil, administrative, regulatory, or international law. (Doc. 119 at 2-5.)

The defense argues that Mr. Guilford should be allowed to discuss his Moorish belief system because the refusal to do so would violate the First Amendment. He cites to no authority to support his contention that in this criminal case, his religious beliefs are relevant to the elements of the offenses or to his defenses.

> "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div., Dept. of Human Res. v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (citation omitted) (holding that the Free Exercise Clause did not prohibit the application of Oregon drug laws to the ceremonial ingestion of peyote). Income taxes are generally applicable laws that are not meant to prohibit the free exercise of religion and are not directed towards Moorish Americans. Accordingly, plaintiffs' status as Moorish Americans does not relieve them of their obligation to pay income taxes. *See Bey v. City of New York Dept. of Corrections*, 1997 WL 576090, at *2 (S.D.N.Y. Sept.17, 1997), aff'd. 164 F.3d 617 (2d Cir.1998), cert. denied, 528 U.S. 860, 120 S.Ct. 149, 145 L.Ed.2d 127 (1999).

*Kelly v. City of New York*, No. 01 CIV. 8906 (AGS), 2002 WL 1482795, at *2 (S.D.N.Y. July 9, 2002), on reconsideration in part, No. 01 CIV. 8906 (AGS), 2003 WL 430487 (S.D.N.Y. Feb. 20, 2003)[2]. Notably, however, any argument that the requirement that Mr. Guilford not violate § 287 based upon his religious beliefs would violate *Cheek* and *Powell*, in that he would be asserting a constitutional disagreement with the law. He has stated repeatedly in his opposition to the motion that he does not seek to claim that the status violates his religious freedom. Thus, the Court is at a

---

the theory believe that the government only has power over the strawman and not the real person. The real person, however, can "redeem" the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power.

*Id.*

[2] In response to *Employment Div., Dept. of Human Res. v. Smith*, 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), Congress enacted The Religious Land Use and Institutionalized Persons Act and the Religious Freedom Restoration Acts of 1993, which provided greater protections to religious activities than the Constitution provides.

1    loss to understand how this evidence could be admitted.

2            The defense cites to *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520

3    (1993) for the proposition that the Court is obligated to allow Mr. Guilford to discuss his religious

4    beliefs. First, *Church of Lukumi Babalu Aye* was a civil case in which the church challenged an

5    ordinance prohibiting the unnecessary sacrifice of animals during a religious ritual. The ordinance

6    was enacted in response to the announcement that the church would open in the city. *Id*. at 526-

7    528. *Church of Lukumi Babalu Aye* bears no relation to the facts here.

8            As the authorities cited by the government indicate (*see* Doc. 119 at 2-5), courts around

9    the country have uniformly held that sovereign citizen-type arguments and evidence related to the

10   sovereign citizen ideology, invoking the UCC or maritime law, or introducing any other form of

11   evidence solely related to the sovereign citizen ideology are frivolous and patently without merit.

12   Thus, the motion is **GRANTED except as noted below**. Should Defense counsel have any doubt

13   about whether questioning or argument will draw close to this line or if the Defense believes that

14   the government has opened the door to any evidence or argument of this nature, he **SHALL** bring

15   the matter to the Court's attention outside the presence of the jury. As to these issues, the

16   government's motion (Doc. 119), is **GRANTED**.

17           **4.      "Good Faith Belief" Defense Based on Disagreements with the Law**

18           The government seeks to preclude the Defense from asserting a "good faith belief"

19   defense in this matter. (Doc. 119 at 5–6.) As the government points out, though good faith

20   ignorance or misunderstanding of the tax code negates the willfulness requirement contained in

21   the criminal tax statutes, *see Cheek v. United States*, 498 U.S. 192, 193–94, 202 (1991)

22   (discussing 26 U.S.C. §§ 7201, 7203), defendants in tax cases may not invoke this "good faith

23   belief" defense based solely on their *disagreement* with the law. *Id*. at 201–206 (defendant "is in

24   no position to claim that his good-faith belief about the validity of the Internal Revenue Code

25   negates willfulness or provides a defense to criminal prosecution under §§ 7201 and 7201").

26   Moreover, mere disagreement with the law does not amount to a good faith belief in the

27   truthfulness of his statements. *See, e.g., United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir.

28   1992) (affirming instruction to the jury that "[m]ere disagreement with the law, in and of itself,

5

1   does not constitute good faith misunderstanding under the requirements of law. Because it is the

2   duty of all persons to obey the law whether or not they agree with it"). Likewise, harboring an

3   opinion that provisions of the tax code are unconstitutional "do not arise from innocent mistakes

4   cause by the complexity of the Internal Revenue Code" and therefore do not negate willfulness.

5   *See Cheek*, 489 U.S. at 205–206.

6       On the other hand, the defense is correct (Doc. 134 at 2-3) that in *Cheek*, the Supreme

7   Court held that it was error to not let the jury consider "evidence of Cheek's understanding that,

8   within the meaning of the tax laws, he was not a person required to file a return or to pay income

9   taxes and that wages are not taxable income, as incredible as such misunderstandings of and

10  beliefs about the law might be." 498 U.S. at 203. *Cheek* also noted that "the more unreasonable

11  the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be

12  nothing more than simple disagreement with known legal duties imposed by the tax laws and will

13  find that the Government has carried its burden of proving knowledge." *Id*. at 230–204.

14      The defense cites to an unpublished order denying a motion to vacate or correct a sentence

15  in a case in which defendants were charged with wire fraud. *United States v. Kalfsbeek*, No. 2:05-

16  CR-0128 MCE AC, 2015 WL 1439949, at *10 (E.D. Cal. Mar. 27, 2015), report and

17  recommendation adopted, No. 2:05-CR-0128-MCE-AC, 2015 WL 2358506 (E.D. Cal. May 15,

18  2015).  The order noted that the court denied the defendant's motion to exclude an expert on the

19  sovereign citizenship movement. *Id*. The order offers no details as to why the court denied the

20  motion or, for that matter, why the government sought to introduce the testimony from the expert.

21  *Id*. In fact, at trial the expert was never called. *Id*. The order then discussed that fact that the

22  defendant's attorney failed to object to the references to the sovereign citizen movement. *Id*. The

23  court found that the references were "collateral and not inflammatory." *Id*. at 11. Given this

24  context, the Court is at a loss to understand how this cause applies here.

25      Likewise, the defense cites to a Florida state law criminal case in which the court allowed

26  the introduction of evidence as to "pro-Moor social media posts along with an expert testimony

27  on Moorish sovereigns" at a sentencing hearing because it was probative of the sentencing issues

28  and not unfairly prejudicial. (Doc. 134 at 6) The significant difference is procedural posture from

1  a penalty phase presentation and this criminal jury trial are so striking as to not truly require the

2  Court's comments. In any event, in that case, *Miller v. State*, 379 So. 3d 1109, 1120 (Fla.), cert.

3  denied sub nom. *Miller v. Fla*., 145 S. Ct. 241 (2024), the government presented the evidence to

4  demonstrate the defendant's motive and, notably, the defense conceded that the testimony was

5  relevant, though unduly prejudicial.

6       Here, the defense offers no explanation as to how testimony from an expert on Moorish

7  sovereign citizen ideology is relevant. As noted above, the question is whether the defendant had

8  a subjective belief that his conduct was not unlawful. What those of Mr. Guilford's same religious

9  convictions believe or what the movement preaches in general, is not relevant.[3]

10       Considering these authorities, the motion is **GRANTED in PART**.[4] The Defense may not

11  assert a good faith belief defense based solely on his disagreement with the law, his opinion about

12  the validity of the tax laws or any general belief that the Tax Code is unconstitutional or

13  inapplicable, but he may present evidence about any subjective beliefs he held as to relevant

14  aspects of his obligations under the Tax Code.[5] In addition,

15                 **5.   "State of Mind" Evidence**

16       The government seeks to preclude the Defense from presenting material related to his

17  state of mind without first laying a proper foundation that he "actually relied" upon that specific

---

[3] As the Court indicated at the hearing, the government may not redact the notations the defendant made on the tax returns referencing the UCC, since this bears on his defense, that he had a good faith belief that he was not acting improperly.

[4] The Ninth Circuit has articulated the elements of a § 287 offense. *United States v. Rincon*, 654 F. App'x 867, 868 (9th Cir. 2016); *United States v. Ataliq*, 502 F.3d 1063, 1067 (9th Cir. 2007) ["Under § 287, the government must prove that the defendant (1) presented a claim against the United States and (2) knew such claim to be false."] citing *United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir.1987) ["[T]he elements of the offense created by 18 U.S.C. § 287 are (1) presenting a claim against the United States, and (2) knowing such claim to be false."] It appears the parties assume that *Cheek* and *Powell* apply to the § 287 charge by analogy because the "knowledge" requirement of § 287 is "sufficiently analogous to the 'willful' standard at issue in *Cheek*." *See United States v. Wallace*, 40 F. Supp. 2d 131, 135 (E.D.N.Y. 1999), aff'd, 213 F.3d 627 (2d Cir. 2000).

[5] For that matter, the government may demonstrate Mr. Guilford understood but disagreed with the requirements of law. *Cheek*, at 202, held, "Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income." This *may* include introduction of 404(b) evidence that would otherwise be excluded for the purpose of showing knowledge. However, because the government did not adequately explain how the 2023 tax return address knowledge of the law in the 404(b) motion, if it seeks to introduce evidence otherwise excluded below, it **SHALL** first raise the issue with the Court outside the presence of the jury.

1    material being offered. (Doc. 119 at 6-8) The law supports the government's motion. *See Powell*,

2    955 F.2d at 1214 ("In § 7203 prosecutions, statutes or case law upon which the defendant claims

3    to have actually relied are admissible to disprove that element if the defendant lays a proper

4    foundation which demonstrates such reliance. Legal materials upon which the defendant does not

5    claim to have relied . . . can be excluded as irrelevant and unnecessarily confusing because only

6    the defendant's subjective belief is at issue.") (internal citations omitted). Even if the proper

7    foundation is established, the evidence may nonetheless be excluded "as irrelevant and

8    unnecessarily confusing" or for any other Rule 403 reason. *See id*; *see also United States v.*

9    *Anderson*, 94 Fed. Appx. 487, 492 (9th Cir. March 23, 2004) (where defendants were allowed to

10   offer some materials to demonstrate their theories about tax law, "neither Rule 403 nor dicta in

11   *United States v. Powell* suggests that failing to admit the *additional* material offered by

12   defendants constituted an abuse of the district court's discretion").

13         Consistent with these authorities, the motion is **GRANTED**. If the Defense intends to take

14   the position that the defendant relied on specific materials, the Defense **SHALL** lay a foundation

15   <u>first</u> before seeking to introduce materials upon which Mr. Guilford claims to have relied for his

16   beliefs regarding the applicability of the tax laws. Then, the Court will determine whether the

17   materials should be admitted. Given the potential for prejudice or confusion, the Defense **SHALL**

18   raise the possibility of offering any such evidence outside the presence of the jury.

19              **6.    "State of Mind" Evidence Offered Through Third Parties**

20         The government also seeks to preclude the Defense from attempting, through cross

21   examination of government witnesses or through his own witnesses, to attempt to elicit witness

22   opinions as to what Defendant believed or what others believed. (Doc. 119 at 8-9.) Though

23   statements of a defendant are not hearsay when they are offered by the government, Fed. R. Evid.

24   801(d)(2)(A), the Defense may not introduce hearsay statements of Mr. Guilford or others who do

25   not testify at trial because such statements are not made by a party opponent. Moreover, any

26   attempt to elicit such testimony is problematic for multiple other reasons, including the nature of

27   this case. As the Seventh Circuit pointed out in a case cited by the government (*see* Doc. 72 at 9),

28   *United States v. Hauert*, 40 F.3d 197, 201–202 (7th Cir. 1994):

1
2
3
4

by the nature of a tax protestor case, defendant's beliefs about the propriety of his filing returns and paying taxes, which are closely related to defendant's knowledge about tax laws and defendant's state of mind in protesting his taxpayer status, are ordinarily not a proper subject for lay witness opinion testimony absent careful groundwork and special circumstances.

5    Thus, such evidence is likely to "not only [be] hearsay, but irrelevant hearsay." *United States v.*

6    *Kahre*, 737 F.3d 554, 577 (9th Cir. 2013). This motion is therefore **GRANTED**.

7    **7.    References to Potential Penalty or Punishment**

8    The Government seeks to preclude reference to any penalty or punishment facing Mr.

9    Guilford at any time during trial. (Doc. 119 at 9-10.) The motion is again unopposed.

10    It is well-established that such references are not relevant to the task of a juror: to find

11    facts and determine whether a defendant is guilty considering those facts. The Supreme Court

12    explained that providing jurors information concerning the consequences of their verdict "invites

13    them to ponder matters that are not within their province, distracts them from their factfinding

14    responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S.

15    573, 579 (1994); *see also United States v. Dredd*, 833 F. App'x 79, 82 (9th Cir. 2020) (extending

16    *Shannon* rationale to jurors being provided with "sentencing information of any kind"). Thus,

17    except for capital trials, the jury "should be admonished to reach its verdict without regard to

18    what sentence might be imposed." *Id.* (internal quotation marks omitted); *see also United States*

19    *v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a

20    jury to consider or be informed of the consequences of their verdict.").

21    Accordingly, the Government's motion is **GRANTED**. Neither party shall reference,

22    directly or indirectly, any potential sentence, punishment, or penalty presented in this case. The

23    jury will also be instructed that such issues are within the exclusive province of the Court and are

24    not to be considered in arriving at a verdict. *United States v. Scarmazzo*, 554 F. Supp. 2d 1102,

25    1109 (E.D. Cal. 2008), *aff'd sub nom. United States v. Montes*, 421 F. App'x 670 (9th Cir. 2011);

26    Model Crim. Jury Instr. 9th Cir. 6.22 (March 2025) ("The punishment provided by law for this

27    crime is for the court to decide. You may not consider punishment in deciding whether the

28    government has proved its case against the defendant beyond a reasonable doubt.").

9

### 8.    Evidence Not Provided in Reciprocal Discovery

The Government indicates it has not received "any reciprocal discovery" from the Defense, (Doc. 119 at 10), despite the government requesting it (Doc. 8), and the Court ordering it (*Id*.). Thus, the government asks the Court to preclude the Defense from offering any evidence not provided as reciprocal discovery.  (Doc. 119 at 10.)

Rule 16 governs the disclosure of information by the defendant in a criminal case. *See* Fed. R. Crim. P. 12(b). Specifically, Rule 16 provides that reciprocal discovery of certain information in particular circumstances must be produced and disclosed to the Government. Therefore, to the extent the Defense has undisclosed reciprocal discovery—which is subject to disclosure under Rule 16—the Defense is prohibited from to introduce such information at trial. Fed. R. Crim. P. 12(d)(2)(C). Accordingly, the Government's motion is **GRANTED**.

### B.    Government's Motion to Admit Self-Authenticating Documents (Doc. 126)

The government moves for a pretrial ruling that certain categories of records and official publications as listed in Exhibits 1 through 4 to the government's motion (Docs. 126-1, 126-2, 126-3, 126-4) be deemed self-authenticating pursuant to Federal Rule of Evidence 902 and that some of the documents also be deemed admissible under relevant exceptions to the rule against hearsay, Fed. R. Evid. 803(6)-(9), 902. (Doc. 73.) The Defense has not opposed the motion in limine.

The relevant legal standards are well established. "The foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). "The government need only make a prima facie showing of authenticity, as 'the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (quoting *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985)). "A proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902 outlines items of evidence that

1  are self-authenticating, meaning the items of evidence "require no extrinsic evidence of

2  authenticity in order to be admitted." Fed. R. Evid. 902.

### 9.    Business Records

4    Federal Rule of Evidence 902(11) provides that "[t]he original or a copy of a domestic

5  record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the

6  custodian or another qualified person" is self-authenticating and does not need to be authenticated

7  at trial to be admissible. Fed. R. Evid. 902(11). For a business record to comply with Rule

8  803(6)(A)–(C), (1) the record must have been "made at or near the time by—or from information

9  transmitted by—someone with knowledge"; (2) the record must have been "kept in the course of

10  a regularly conducted activity of a business, organization, occupation, or calling, whether or not

11  for profit"; (3) "making the record was a regular practice of that activity;" and (4) "the opponent

12  does not show that the source of information or the method or circumstances of preparation

13  indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

14    The government has provided certifications to accompany each of the records it seeks to

15  admit by this mechanism. (*See* Doc. 126-1.) A review of these certifications confirms that the

16  following certifications associated with specific Government Exhibits (GXs) comply with

17  902(11) and 803(6).

18    Because the certifications comply with the Federal Rules of Evidence, because the

19  Defense has had a fair opportunity to review the records, and because the Defense does not

20  demonstrate any lack of trustworthiness in the documents and did not oppose the motion, the

21  motion to authenticate these business records is **GRANTED**. The government need not have live

22  witnesses testify as to the authenticity of the exhibits listed in the table above. For the same

23  reasons the Court finds the above-listed exhibits satisfy the requirements of the hearsay exception

24  set forth in Rule 803(6) and the Government's motion to admit them under that exception is

25  **GRANTED**.

### 10.    Certified and Sealed Public Records

27    The government seeks a pretrial finding that those exhibits listed on Doc. 126-2, from the

28  IRS and California DMV are self-authenticating public records that meet the requirements of

1    Rule 902(1) and satisfy the public records hearsay exception under Rule 803(8).

2                            *a.        Self-Authentication*

3           As to authentication, public records that are "signed and sealed" are self-authenticating

4    under Federal Rule of Evidence 902(1). The Court has reviewed the copies of these documents

5    provided to the Court and finds that they meet the requirements of Rule 902(1). They are records

6    from qualifying government entities—the IRS and the California DMV—and bear appropriate

7    seals and signatures. (Doc. 126-2.) The Defense does not suggest otherwise.

8                            i.        IRS Records

9           The first set of exhibits listed in Doc. 126-2 are IRS records. As the government correctly

10   indicates (Doc. 126 at 3), there may be non-hearsay uses for many of these documents, such as

11   Mr. Guilford's tax filings which may be admissible as a statement of a party opponent. *See* Fed.

12   R. Evid. 801(d)(1).

13          Also, there is authority that suggests IRS transcripts are admissible under Rule 803(8). *See*

14   *United States v. Griffith*, No. 3:09-CV-01197 CSH, 2013 WL 1131422, at *2 (D. Conn. Mar. 18,

15   2013) (finding tax transcript admissible under Rule 803(8)); *see also United States v. Kuzmenko*,

16   No. 2:12-CR-00062 JAM, 2014 WL 1334003, at *2 (E.D. Cal. Apr. 3, 2014)(finding immigration

17   A-file to be exempt from the hearsay bar under Rule 803(8)). Thus, in the absence of any

18   suggestion to the contrary, the Court finds that any tax transcripts listed in Doc. 73-2 satisfy Rule

19   803(8). *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (where caselaw

20   clearly establishes a category of documents to be public records within the meaning of Rule

21   803(8), it becomes defendant's obligation to show they are untrustworthy). The motion for

22   finding that these records satisfy Rule 803(8) is **GRANTED**.

23          For the same reasons the Court finds the above-listed exhibits satisfy the requirements of

24   Federal Rule of Evidence 902(1) and the hearsay exception set forth in Rule 803(8). The

25   Government's motion to admit them under that exception is **GRANTED**.

26                           ii.        California Department of Motor Vehicles (DMV) Records

27          Next the government seeks a finding that signed and sealed copies of Mr. Guilford'

28   California driver's license (GX 107) is admissible under Rule 803(8). To the extent ultimately are

offered for hearsay purposes, these documents satisfy Rule 803(8). This Court recently granted a motion in limine to allow for pretrial admission of a defendant's driver's license presented by way of a certified copy of that record where, as is the case here, the defense did not object. *United States v. Garza*, No. 1:22-CR-00062 JLT SKO, 2024 WL 4216952, at *22 (E.D. Cal. Sept. 17, 2024). The motion for finding that these records satisfy Rule 803(8) is **GRANTED**.

### 11.    Public Records Recorded or Filed in a Public Office

The government seeks to introduce exhibits from the United States Postal Office, Sacramento County Consolidated Utilities Billing & Service, Sacramento County Revenue Recovery, Sacramento Department of Child Support Services, State of California, Secretary of State and State of California, State Registrar of Vital Records (Doc. 126-3). The documents in this category appear to qualify for authentication under Rule 902(4)(A) (deeming self-authenticating any "copy of an official record — or a copy of a document that was recorded or filed in a public office as authorized by law — if the copy is certified as correct by . . . the custodian or another person authorized to make the certification"). The documents from each of these agencies are accompanied by the certification.

Because the certifications comply with the Federal Rules of Evidence, because the Defense has had a fair opportunity to review the records, and because the Defense does not demonstrate any lack of trustworthiness in the documents and did not oppose the motion, the motion to authenticate these records is **GRANTED**. The government need not have live witnesses testify as to the authenticity of the exhibits listed in the table above. For the same reasons the Court finds the above-listed exhibits satisfy the requirements of the hearsay exception set forth in Rule 803(8) and the Government's motion to admit them under that exception is **GRANTED**.

To the extent any of these documents are offered for a hearsay purpose, they appear to qualify under the hearsay exception set forth at Federal Rule of Evidence 803(8). *See Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) (official IRS documents, even if generated by a computer, are admissible as public records under Federal Rule of Evidence 803(8)). A public record is one that sets forth: (1) the office's activities, (2) that the matter described in the record

was "observed while under a legal duty to report," and (3) the defense has not shown a lack of trustworthiness. The declarations related to the records (GX 108, GX 145, GX 155, GX 225, GX 165, GX 214[6]) appear to satisfy the requirements of Rule 803(8) even though they do not use the same language of the Rule.

### 12.    Self-Authenticating Official Publications

Rule 902(5) provides that a "book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating. The government lists at Doc. 126-4 six official IRS publications, which appear on the IRS website. The Court concludes that Rule 902(5) is satisfied as to GX 10-13, 15 and 21. The motion is **GRANTED** as to those exhibits. The government need not have live witnesses testify as to their authenticity.

### C.    Government's Motion to Admit 404(b) Other Acts Evidence/ Intertwined Evidence (Doc. 128)

The government gave notice pursuant to Rule 404(b) that it intends to introduce evidence of the following other acts of Mr. Guilford:

(1) Submitting other false tax returns to the Internal Revenue Service ("IRS") between 2019 and 2022;

(2) Issuing checks from bank accounts with insufficient funds;

(3) Claiming the attempted purchases of properties as withholdings;

(4) Debts owed to various entities listed in Forms 1099-OID and Forms 1099-A and claiming those debts as withholdings;

(5) Purchasing two houses with funds generated from the false tax return; and

(6) Evidence of debts owed related to unpaid utilities, school loans, fees related to returned checks and for unpaid child support.

(Doc. 128 at 1, 7-8.) In addition, the government indicates that it intends to offer certain evidence related to the other acts evidence of Mr. Guilford that are inextricably intertwined with the charged conduct and therefore not subject to Rule 404(b). (*Id*. at 2.)

---

[6] The records from the Secretary of State appear also to be certified, signed and sealed and admissible under Fed. Rules Evid. 902(1), (2).

### 1. Additional Relevant Factual Background

The government asserts that to justify the reported income, withholdings, and claimed refunds on the various tax filings, Mr. Guilford submitted various tax forms, including Forms 1099-OID (Original Issue Discount)[7]; Forms 1099-A (Acquisition or Abandonment of Secured Property)[8]; and Schedule K-1s (Partner's Share of Income, Deductions, Credits)[9].

For the tax returns charged in Counts Two, Five, Six, Seven, and Eight, the attached Forms 1099-OID indicated that Mr. Guilford, the Christopher Eugene Guilford Estate or the The Christopher Eugene Guilford Revocable Trust provided loans or "debt securities" to various entities, including JP Morgan Chase, Sacramento County Revenue Recovery, and Mercedes Benz of Sacramento, among others. The government contends that the Forms 1099-OID purported to document withholdings based on those loans but that those loans never existed. Instead, the amounts listed on the Forms 1099-OID often related to debts that Mr. Guilford owed or checks he issued that were returned as "altered/fictitious" or for insufficient funds. (*Id*.)

Relatedly, Forms 1099-A attached to the tax returns charged in Counts Two, Five, Six, Seven, and Eight indicated that Mr. Guilford acquired property as satisfaction for debts owed by various large financial institutions, including JP Morgan Chase, Sacramento County Revenue Recovery, and Mercedes Benz of Sacramento, among others, often mirroring the Form 1099-OID for the same entity. The government submits that the evidence will show Mr. Guilford never obtained property to satisfy any such debts, nor are there any records of property being

---

[7] The term "original issue discount" refers to "the difference between the price for which a debt instrument is issued (the acquisition price) and the stated redemption price at maturity." *See United States v. Gaylor*, No. CV 09-02026 GAF (AJWx), 2009 WL 10673599, at *1 (C.D. Cal. Oct. 28, 2009). For example, "if a taxpayer pays $750 for a bond with a stated redemption price of $1,000, the taxpayer effectively receives $250 in OID." *United States v. Hesser*, 800 F.3d 1310, 1320–21 (11th Cir. 2015). The OID amount is a "form of interest income" that is taxable and reportable to the IRS. *Id*. at 1321.

[8] Forms 1099-A are completed when a lender loans money and, in satisfaction of the debt, acquires an interest in property that is security for the debt. *See* Instructions for Forms 1099-A and 1099-C, Internal Revenue Serv. (April 2025), *available at* https://www.irs.gov/instructions/i1099ac (last visited July 17, 2025) The lender completes the Form 1099-A and is required to provide a copy of the form to the borrower. *Id*. For example, 1099-As may be completed by banks or loan providers when there is a foreclosure on a debtor's house or property. *See generally Bates v. CitiMortgage, Inc*., 844 F.3d 300 (1st Cir. 2016).

[9] For partnerships, a Schedule K-1 "lists the portion of the partnership's profit or loss allocable to the partner." *See United States v. Walsh*, 6 Fed. Appx. 781 (10th Cir. 2001). Each partner reports "the profit or loss allocated to them on their K-1s in their individual, corporate, or partnership income tax returns, as the case may be." *Id*.

1  abandoned by those entities in satisfaction of any debts to Mr. Guilford. (*See* Doc. 128 at 3.)

2                    **2.      404(b) Evidence**

3                    *a.      Applicable Legal Standards*

4        Rule 404(a) provides "[e]vidence of a person's character or character trait is not

5  admissible to prove that on a particular occasion the person acted in accordance with the character

6  or trait." Fed. R. Evid. 404(a). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other

7  act is not admissible to prove a person's character in order to show that on a particular occasion

8  the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) provides,

9  however, that prior acts evidence "may be admissible for another purpose, such as proving

10  motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

11  accident." Fed. R. Evid. 404(b).

12        The Ninth Circuit has held that "Rule 404(b) is a rule of inclusion." *United States v.*

13  *Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if

14  it is relevant to an issue other than the defendant's character or criminal propensity." *Id.*

15  Generally, evidence of other acts that explain the nature of the relationship between the defendant

16  and a witness and/or put their interactions into context is admissible under Rule 404(b). *See*

17  *United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir. 1985). Once relevance is established, the

18  district court should admit the evidence unless its prejudicial impact substantially outweighs its

19  probative value. *Id.*

20        Rule 404(b) does not apply to other acts evidence that is "directly related to, or

21  inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354

22  F.3d 850, 854 (9th Cir. 2003). "Evidence is 'inextricably intertwined' when it either constitutes a

23  portion of the transaction giving rise to the criminal charge, or is necessary to allow the

24  prosecution 'to offer a coherent and comprehensible story regarding the commission of the

25  crime.'" *United States v. Yandell*, 2024 WL 694373, at *2 (E.D. Cal. Feb. 20, 2024) (quoting

26  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)). "There must be a

27  sufficient contextual or substantive connection between the proffered evidence and the alleged

28  crime to justify exempting the evidence from the strictures of Rule 404(b). *Vizcarra-Martinez*, 66

1  F.3d at 1013.

2      Because evidence of other crimes or wrongful conduct is potentially prejudicial, *see*

3  *Alfonso*, 759 F.2d at 739, it may only be admitted under 404(b) if it: "(1) it tends to prove a

4  material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a

5  finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the

6  act is similar to that charged." *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288–89 (9th Cir.

7  1996).

8              *b.      Uncharged false tax returns submitted between 2017 and 2021.*

9      In addition to the false tax returns charged in the Indictment, the government seeks to

10  present evidence that Mr. Guilford filed at least ten other tax returns with the IRS that were also

11  false. (Doc. 128 at 5–6.) The government asserts that evidence will show there was no income

12  and no federal tax withholdings for any entity as reported in the charged and uncharged returns.

13  (Doc. 128 at 5-6.) The government further submits that IRS records will also that Mr. Guilford

14  received at least ten letters or notices about his filings being deemed frivolous by the IRS. (*See*

15  *id*.) The government contends that these uncharged returns and notices are evidence of Mr.

16  Guilford' knowledge, intent, state of mind, identity, and absence of mistake.

17      The government also seeks to preadmit IRS records and bank account records to

18  demonstrate that the defendant had no income and no federal tax withholdings for any entity

19  identified by him in his returns.

20      The government anticipates witnesses from each entity referenced in the Forms 1099-OID

21  and 1099-A attached to the uncharged tax returns will testify that they never received a loan or

22  "debt security" from the defendant or an entity associated with him; and that the amounts claimed

23  in the Forms 1099-OID and 1099-A relate to either a debt Mr. Guilford owed to the entity or

24  checks that were returned as "altered/fictitious" or for insufficient funds. (Doc. 128 at 6) For

25  filings where Schedule K-1s were attached, the government anticipates its witnesses will present

26  evidence indicating that Mr. Guilford falsely claimed $755,000 in partnership income from KCS,

27  and that this amount of income is tied to a check that was returned for insufficient funds. (*Id*.)

28      The Defense opposes admission of these uncharged tax returns on the ground that they are

1   not probative of the charged offenses and will "add nothing to this trial but prejudice, confusion,

2   and a waste of time." (Doc. 136 at 2.) This objection is not well founded. The uncharged returns

3   are probative of Mr. Guilford' knowledge, intent, and state of mind because he continued to

4   submit similar returns even after being told by the IRS that his returns were frivolous. The

5   evidence is probative also of Mr. Guilford' state of mind because it appears that he submitted

6   multiple returns, using different methods and entities, until he was successful (Doc. 128-1). *See*

7   *United States v. Jackson*, 845 F.2d 880, 884 (9th Cir. 1988) ("The fact that Jackson submitted

8   prior false claims involving the same [allegedly lost] nine VA checks is probative on issues of

9   intent, knowledge, good faith and absence of mistake in his later dealings with the Treasury

10   Department [the subsequent year]."). The Court is satisfied that the uncharged returns tend to

11   prove knowledge, intent, and state of mind as described above; (2) the prior acts ranging from

12   2017 to 2020 are not too remote in time from the charged conduct; (3) the evidence appears to be

13   sufficient to support a finding that Mr. Guilford committed the uncharged acts; and (4) the

14   uncharged acts are very similar to charged conduct. The government's motion in limine to permit

15   introduction of this evidence pursuant to Rule 404(b) is **GRANTED**. This ruling is subject to

16   reconsideration if presentation of this evidence consumes an excessive amount of time.

17                    c.    *Altered/fictitious checks and checks from bank accounts with*

18                          *insufficient funds.*

19          Closely related to the above, the government seeks permission to present evidence that

20   Mr. Guilford issued checks that were returned for insufficient funds including a check for

21   $74,938.79 from a JP Morgan account to Mercedes Benz. The check was returned for insufficient

22   funds. On the same date, the defendant purchased a vehicle from Mercedes Benz using this check.

23   (*See* Doc. 128 at 6.) Mr. Guilford later claimed that exact amount in Forms 1099-OID and 1099-

24   A attached to to the tax returns at issue in Counts Seven and Eight and in uncharged tax returns

25   filed on February 1, 2019 and March 26, 2019. (Doc. 128 1.) The government contends the

26   checks are evidence of Mr. Guilford' knowledge, intent, state of mind, motive, identity and

27   absence of mistake, and to show the related tax returns were false. (Doc. 128 at 6.) The defense

28   objects to this evidence based upon jury confusion, undue consumption of trial time and, in

essence, on relevance grounds. (Doc. 136 at 2)

As with the uncharged returns discussed above, the Court is satisfied that evidence regarding these checks tends to prove a material fact, including identity. The link between the figures submitted in the 1099-OID and 1099-A could support a finding that Mr. Guilford submitted those false claims because they correspond to *his* debts. In addition, the evidence is close in time to the charged conduct; the evidence appears likely to support a finding that Mr. Guilford issued those checks; and the acts are similar to conduct intertwined with the charged tax returns. Alternatively, it appears that these checks constitute evidence that is intertwined with crimes charged in the indictment because they constitute a portion of the transaction giving rise to the criminal charge." *Lillard*, at 854. The government's motion in limine to permit introduction of this evidence is **GRANTED**.

> d.       *Evidence of purchases and attempted purchases of properties.*

According to the government, in October 2017, Mr. Guilford attempted to purchase a property in Rancho Cordova for $530,000. (Doc. 128 at 7.) Mr. Guilford submitted a check for $525,327 to close the property. (*Id.*) The transaction was cancelled before closing. (*Id.*) Mr. Guilford later attached Forms 1099-OID and 1099-A related to that check for $525,327 to a tax return filed on March 12, 2019 and was the same amount claims as withholdings in Count three. (*Id.*)

Mr. Guilford later attempted to buy a property in Sacramento using a check for $245,000. (Doc. 128 at 7) Due to other costs added in, he was to pay $253,108.69 for the property. (*Id.*) The closing did not occur because the title company refused the defendant's personal check he tried to use to pay for the property and he did not wire the money as he was instructed. (*Id.*) He then attached Forms 1099-OID and 1099-A related to that check for $253,108.69 to the same tax return filed on February 1, 2019. (*Id.*) The government intends to introduce testimony and records from the banks, title companies—including records from First American Title—and deeds related to these purchases as evidence of Mr. Guilford's knowledge, intent, state of mind, motive, identity and absence of mistake, and to show the tax return was false.

Mr. Guilford filed his own motion precluding the introduction of the documents from First

1    American Title. (Doc. 124 at 3) He argues that these documents have "no probative value as to

2    the current charges and impermissibly attempts to establish Mr. Guilford's propensity to defraud.

3    This is highly prejudicial . . ." *Id*. He does not address the government's assertion that the check

4    formed the basis for his attached Forms 1099-OID and 1099-A, which were then attached to the

5    January 28, 2019 tax return, claiming withholdings for tax year 2018. (Exhibit 77)

6         He also argues that evidence "from the banks and the title companies about the attempted

7    purchases as evidence would only confuse the jury" because these properties are not subject to the

8    criminal forfeiture. (Doc. 136 at 2-3) Notably, the government does not seek to introduce this

9    evidence as to the forfeiture but as noted above, to demonstrate that these checks formed the basis

10   for withholdings claims.  Thus, the Court finds the requirements of Rule 404(b) are satisfied as to

11   this evidence. The evidence again tends to prove material facts, for example, that he knowingly

12   intended to defraud the government, and that he did so not by mistake. This is because this

13   evidence tends to show that Mr. Guilford knew the source of the amounts listed in the tax returns,

14   and knew they were not related to withholdings, but he submitted tax returns claiming them as

15   withholdings. In addition, this evidence is close in time to the charged conduct; supports a finding

16   that Mr. Guilford committed the uncharged acts; and is similar to charged conduct.

17        Moreover, this evidence is intertwined with the conduct charged in Counts Five and Six.

18   of the indictment. Though the evidence is prejudicial, it is not unfairly so, and the probative value

19   of the evidence is high. Thus, the government's motion in limine to permit introduction of this

20   evidence is **GRANTED** and the defendant's motion to preclude the introduction of this evidence

21   is **DENIED**.

22             e.        *Debts owed to various entities listed in Forms 1099-OID and*

23                      *Forms 1099-A attached to uncharged returns.*

24        The government submits that Mr. Guilford' Forms 1099-OID and 1099-A attached to the

25   uncharged tax returns listed in Exhibit A often related to debts Mr. Guilford owed. (Doc. 128 at

26   7-8.) Information provided in the Forms 1099-OID and 1099-A, such as the entity name, amounts

27   listed, account numbers, dates, etc., often matched Mr. Guilford' debt to each entity. The

28   government anticipates employees from each entity will testify at trial about the debts Mr.

1    Guilford owed to each, and that they never obtained a loan or other debt security from Mr.

2    Guilford, contrary to his Forms 1099-OID and 1099-A. The government intends to introduce

3    evidence related to these debts as evidence of Mr. Guilford' knowledge, intent, state of mind,

4    motive, identity and absence of mistake, and to show the tax returns were false.

5         The defense objects to the evidence due to concerns over jury confusion and an undue use

6    of trial time. (Doc. 136 at 3) Again, the Court finds the requirements of Rule 404(b) are satisfied

7    as to this evidence, which (1) tends to prove a material fact, including knowledge, intent, and lack

8    of mistake; (2) the conduct occurred close in time to the charged conduct; (3) the evidence as

9    proffered will support a finding that Mr. Guilford committed the uncharged acts; and (4) the acts

10   are similar to charged acts. The government's motion in limine to permit introduction of this

11   evidence pursuant to Rule 404(b) is **GRANTED**.

12                *f.*     *Purchasing properties using funds fraudulently obtained from the*

13                     *IRS*

14        The government contends that Mr. Guilford used the money from the improper tax returns

15   resulting from Count One to purchase two properties. (Doc. 128 at 8) He purchased one property

16   in Sacramento in July 2019 and a second in Las Vegas in November 2019. (*Id.*) The government

17   contends this evidence demonstrates the defendant's willfulness, knowledge, intent, motive, and

18   identity. The defendant argues that this evidence does not prove willfulness, knowledge, intent, or

19   motive but only "a propensity to purchase homes." (Doc. 136 at 3)

20        The Court finds the requirements of Rule 404(b) are satisfied as to this evidence, which

21   (1) tends to prove a material fact, including knowledge, intent, and lack of mistake; (2) the

22   conduct occurred close in time to the charged conduct; and (3) the evidence as proffered will

23   support a finding that Mr. Guilford committed the uncharged acts. The government's motion in

24   limine to permit introduction of this evidence pursuant to Rule 404(b) is **GRANTED**.

25                *g.*     *Child Support Payments and other debts*

26        The government seeks to admit evidence that Mr. Guilford owed debts to various entities

27   including, Sacramento County Consolidated Utilities Billing and Services unpaid utility bills,

28   Educational Credit Management Corporation and Great Lakes Educational Loan Services for

1  unpaid student loans, Sacramento County Revenue Recovery for fees for checks returned for

2  insufficient funds and Sacramento County Department of Child Support Services for unpaid child

3  support. (Doc. 128 at 7-8) The government argues that this demonstrates the defendant's

4  willfulness, knowledge, intent, state of mind, identity and absence of mistake, and to show the tax

5  returns were false, presumably as evidence that he had little to no income. *Id.*

6       The defendant moves separately to preclude admission of the child support payments.

7  (Doc. 124 at 3.) He argues that this evidence, even if relevant, is highly prejudicial because "it

8  would risk influencing the jury to make decisions based on Mr. Guilford's character rather than

9  the evidence related to the charged offenses."

10      As to the child support payments, the government asserts that "Forms 1099-OID and

11  1099-A attached listing "Sacramento County Department of Child Support" as a "Recipient" or

12  "Borrower" were filed by Mr. Guilford in which he claimed that the amounts he owed for child

13  support were, instead, amounts that were withheld, such that he was entitled to a refund. (Doc.

14  133 at 2) The government asserts that this conduct constitutes acts charged in Counts Five and

15  Six. *Id.*

16      Thus, it appears that this evidence is intertwined with the conduct charged in Counts Five

17  and Six of the indictment. Though the evidence is prejudicial, most is not unfairly so, and the

18  probative value of the evidence is high. Thus, the defendant's motion to preclude the introduction

19  of this evidence is **DENIED in PART**.  The Court agrees that they are admissible for the reasons

20  set forth. Thus, the government's motion as to these other debts is **GRANTED in PART.**  As to

21  the records and testimony related to the child support records may be admitted but references to

22  "child support" **SHALL** be redacted due to the inflammatory nature of evidence and the unfair

23  prejudice that will result should the jury learn that the defendant failed to pay to support his

24  children.

25  **I.    Defendant's Motions in Limine (Doc. 124)**

26        **D.    Prior Bad Acts, Convictions, Current State Charges**

27      Mr. Guilford seeks to preclude the government from introducing evidence of his criminal

28  history and the fact that he is in arrears on child support payments. (Doc. 124 at 2) He provides

little information about the nature or timing of these convictions except to indicate that they include "domestic violence, burglary, vehicle theft, assault, and resisting/obstructing arrest." *Id*. He reports also that "a significant portion of Mr. Guilford's criminal history occurred 19 years ago and lacks a sufficient link to the charged offenses . . ." *Id*. On the other hand, the government has filed its 404(b) motion, and it does not include seeking to introduce Mr. Guilford's criminal convictions or evidence of any current state charges, and it does not oppose the motion in this regard unless and until the defendant opens the door to this evidence (Doc. 133 at 1). Thus, the motion is **GRANTED.**

### E.   Prior Bankruptcy

Mr. Guilford seeks to preclude the government from introducing evidence of his bankruptcy. (Doc. 124 at 3) He provides no information as to when the bankruptcy occurred. *Id*. In any event, the government has not sought to introduce this evidence and does not oppose the motion in this regard (Doc. 133 at 1). Thus, the motion is **GRANTED**.

IT IS SO ORDERED.

Dated:   **August 18, 2025**

UNITED STATES DISTRICT JUDGE